Hobbs *v.* Parker.

---

## Hobbs *versus* Parker.

Questions raised by pleading, and issues taken thereupon, followed by a verdict and judgment, cannot be agitated, in another suit between the same parties or their privies, concerning the same subject matter.

A reference made by a party in pleading, to documents concerning a point, *not in controversy*, will not invalidate his proceedings, although such document contain representations at variance from the allegations of the party making the reference.

Thus, if in a real action, a party, in order to elucidate his case, refer in his plea, to a plan of land, not in controversy, his rights are not concluded, by the reference, although the plan present views in conflict with the allegations of the plea. In such a case, he may show the plan to be erroneous.

A owned land, and was also a tenant in common with others, in an adjoining tract. The other co-tenants instituted a process for partition, describing the common land by its true boundary. By mistake in the plan, taken by order of the court, the divisional line between the two lots, was laid down erroneously, and by means of that error, a part of A's *own* lot was assigned to one of the petitioners. In a real action by such petitioner to recover said part, it is no answer to the title set up by A, that, by the erroneous line, a larger portion of the *common* land would fall to A.

Where each party has the same information, and an equal opportunity to ascertain the truth, it cannot be said, that the one wilfully withholds any thing, and thereby deceives the other.

WRIT OF ENTRY. The case came up on an agreed statement of facts.

One William Frost, at the time of his death, was seized in fee of a lot of land. After his decease, the title passed to John Powers and wife, and Abiel Hall and wife, who were seized in fee during all the proceedings had in the process of partition hereafter mentioned.

On the south of the Frost lot, and adjoining to it, was a tract called the Province mill privilege. The demandant and many others who had become tenants in common in said tract, instituted a process for partition of the whole tract, alleging that they were tenants in common with other persons, to them unknown, and setting forth the proportions of the land which they respectively claimed. They described the tract as bounded north-westerly by land formerly owned by the late William Frost, as the land was fenced at his decease. · The court appointed one Goodwin as a surveyor.

The said Powers and wife, and Hall and wife, and Theodore Willard, entered their appearance as respondents, and pleaded three several pleas, in each of which they alleged that, as to a described small lot, within the general tract, they were, as ten-ants in common among themselves, sole seized in fee. In each of these pleas, in describing the small lot, there was contained a reference to certain marks and lines upon Goodwin's plan.

Upon these pleas issue was joined.

The jury found, as to the issue upon the first plea, that said Powers and wife, and Hall and wife, and Willard, were sole seized of the small lot therein described. The other issues were found for the petitioners. In all the tract, except said small lot owned by Powers and wife, and Hall and wife, and Willard, the said Powers and wife and Hall and wife were tenants in common with the petitioners.

A warrant was thereupon issued directing commissioners to assign to the petitioners their respective shares, excepting said small lot first described. The warrant described the tract as being bounded north-westerly by land formerly owned by the

late William Frost. The land now sued for was assigned to Hobbs, this demandant, upon that partition, and by the plan.

The report of the commissioners was accepted.

Parker, the tenant, is owner of the Frost lot, under Powers and wife, and Hall and wife, to whom the same had come, as above stated, from said Frost. He claims to hold a part of the demanded land, and contends that he has the right to prove, by parol, that the fence, on the southerly side of the Frost lot, (which existed at Frost's death, and was the true boundary line,) had been removed northwardly before the making of Goodwin's plan ; and that a part of the land demanded belongs to him, as a part of the Frost lot, though within the parcel assigned by said commissioners to Hobbs. The plan is made a part of the case.

The demandant claims that the proceedings in said petition for partition and the judgment thereof, and said assignment to the demandant, are conclusive between these parties and that parol evidence is inadmissible, as contended for by the tenant.

The parties agree, that if said proceedings, judgment and assignment are conclusive between the parties ; and that the parol evidence is not admissible as contended for by the tenant, then the tenant is to be defaulted as to the land not disclaimed by the tenant ; but if otherwise, then this action is to stand for trial.

*J. Shepley*, for the demandant.

Powers and wife, and Hall and wife, have confirmed the plan by referring to it, in their pleas. Neither they, nor the tenant, who claims by a subsequent conveyance under them, can now object, that it included land not belonging to the Province mill privilege tract.

If the land now claimed, had belonged to the tenant's grantors, they should in the partition process have pleaded their sole seizin of it, as they did in relation to the three other small pieces which they claimed.

Those grantors were rightfully in court, through all the proceedings in that process. They pleaded to the petition and

might have resisted, and perhaps they did resist, the accept-ance of the commissioners' report. At any rate, they must be considered as having had notice of it.

The proceedings and judgment in the partition process are conclusive. As between these parties, they fix the line be-tween the Province mill privilege and the Frost lot, to be according to the plan.

The warrant required a partition of " the Province mill priv-ilege" tract. It also described it, as bounded on the north-west " by land formerly owned by the late William Frost." Now, even if these phraseologies are to be controlled by the words in the petition, " as the land was fenced at his decease," still the plan must be held as the correct delineation.

If the " fence" is to control, the petitioners could not go beyond it, although it were some distance within the Province tract. But Frost's heirs, in such a case, could hold nothing in the tract, unless the plan be conclusive.

Powers and wife, and Hall and wife, would gain as much in the Province tract, as they would lose of the Frost tract.

After permitting, throughout the trial, what is now claimed as a part of the Frost lot, to be considered and treated as part of the Province tract, they cannot in law be allowed to con-trovert their implied admission. If their view of the bound-ary line be correct, they must have known it at the trial of the partition case, and ought to have disclosed it. If they had done so, they would, as tenants in common with the petitioners, have obtained less of the Province tract, and Mr. Hobbs' share would have been assigned him correctly. 28 Maine, 127 and 525; 21 Maine, 130; 19 Maine, 412; 16 Maine, 146; 13 Maine, 131; 4 Metc. 381; 12 Metc. 405 and 494.

*Goodenow* and *Appleton*, for the tenant.

There is no estoppel to show the land was a part of the Frost lot. To constitute an estoppel, the same point must be put in issue upon the record, and directly found by the jury. It is not established on collateral facts or inferences drawn

from a verdict. 3 East, 346; 11 Pick. 311; 5 N. H. 259; 7 Pick. 147; 15 Pick. 276.

Where the fence stood at Frost's decease, was not a fact put in issue, in the partition process. The issue there tried, was only the fact of sole seizin.

The plan was not taken to settle the exterior lines with third persons. The respondents in that process were not in fault that the warrant did not conform to the petition. *They* had no share set off to *them*. They could not plead sole seizin as to any part of the Frost lot, for it was not embraced in the petition. They were strangers, as relates to land extra the petition. They could not be heard to resist the report. The judgment "*quod fiat partitio,*" extends only to the land embraced in the petition.

A plaintiff is estopped by his petition to claim beyond the boundaries described in it. 26 Maine, 277.

A partition, however regularly made, binds the right of possession only. It does not establish right in the property. 2 Mass. 462; 16 Pick. 500; 13 Mass. 212.

TENNEY, J. — The land in controversy is included in the boundaries of the portion assigned to the demandant under a judgment for partition, in a petition in which the parcel therein described is represented as bounded "north-westerly by land formerly owned by the late William Frost, deceased, as his land was fenced at the time of his decease." While the petition was pending in court, a surveyor was appointed, who made a survey and returned a plan thereof. The demandant was one of the petitioners, and John Powers and his wife, in her right, Abiel Hall and his wife, in her right, and Theodore Willard, appeared in defence and pleaded different pleas to different and distinct portions of the premises, whereof partition was prayed for, alleging that they were seized of the same solely, and denying that they were seized thereof in common with the petitioners. In some of those pleas, reference is made to the plan taken by order of court, for a description of the several parts so defended. Upon those pleas, issues to the

country were presented, and tried; but in none of them was involved any question, touching the *particular boundaries*, of the several parcels described, or of the whole tract. A verdict was returned for the respondents upon one of the issues, and for the petitioners in the others. Judgment was rendered, " that partition be made of so much of the premises described in said petition as remained after excepting therefrom the part thereof of which the said Powers and wife, and Hall and wife, and Willard, were found to be sole seized," which part excepted is described in the terms in the plea, that was applicable to that portion of the premises. Upon this judgment, a warrant for partition was issued; the commissioners appointed indorsed return of the division, as made by them; this return was accepted by the court, and final judgment thereon entered.

The grantors of the tenant, John Powers and wife, and Abiel Hall and wife, at the time the petition was pending, when the warrant for partition was issued, and when final judgment was rendered, were seized in fee of the land adjoining to the premises described in the petition, " as land formerly owned by the late William Frost, deceased, as the land was fenced at his decease."

A part of the land described in the demandant's writ is disclaimed; the residue, the tenant claims to hold, and contends that he has the right to prove, by parol evidence, that the same belonged to the said Frost, and as it was fenced at the time of his decease, and that the fence was removed northerly after his decease, and before the plan was taken in the suit upon petition for partition, although the same was afterwards included in said land assigned to the demandant by the commissioners, who made partition. The demandant on the other hand insists, that the proceedings on the petition for partition, and the judgment thereof, and the assignment to the demandant, are conclusive between these parties, and that parol evidence is inadmissible; and that the true line between them is to be determined by the plan taken in the case. This is the only question presented for consideration.

So far as questions are raised by the pleadings and issues thereupon taken, followed by a verdict and judgment, they cannot be agitated in another suit, between those who are parties or privies to such judgment. But for the purpose of presenting clearly, points really in dispute, reference may be made in pleadings to matters, not at all in controversy ; and it may turn out, that, in some respects, the things referred to, may be erroneous. These errors, if known at the time, would not in the least .affect the questions litigated, which were unconnected therewith, and neither of the parties would be concluded by such reference. In real actions such disputes may arise, as render it convenient if not necessary, that a map should be made, which may represent the land that is the subject of the suit, and the different objects upon the earth, which may be supposed to have relation to it. And when all the evidence is adduced, it may be seen, that the plan is not wholly, or even in any respect, correct ; still it may essentially aid in enabling all interested in the trial, more clearly to understand the evidence, and thereby answer the purpose originally entertained in causing it to be made. The true location of a line between two contiguous owners of land may be the only object sought in a suit at law. A plan, made upon a survey directed by the court, may show distinctly the line for which each party contends, and other things deemed by them, respectively, as material. It is proper for the surveyor to protract all lines and other objects, which either may direct. By so doing, he does not even give to such lines the force of an opinion, that they are a true representation of what really exists upon the earth ; and his opinion, if given, has no more validity than that of any other person, having the same ability to know and understand the facts in the case. The plan itself, and the lines laid down thereon, can have no effect to conclude the parties to the suit, who may refer to it in their pleadings, any farther than they are adopted by the issues, and make an element in the judgment. Errors in any representation upon the plan, foreign to the questions involved, can in no respect control the rights of the parties.

The pleas of the respondents, upon the petition for partition, refer to the plan made by the surveyor in several instances. But it is for the purpose only of denying the title of the petitioners as claimed by them, to each part described in the different pleas, and not as raising the question, whether the lines between the several divisions are correctly delineated upon the plan. And it does not appear to have been a subject of attention by the parties, much less of controversy, whether the exterior boundaries of the land described in the petition were located according to its terms or otherwise. The dispute presented by the pleadings generally, had reference only to the land described, as between its several proprietors, and not to the rights of owners of other lands adjoining. The verdict of the jury had no reference to the plan, by which the line now in controversy, as laid down thereon, has been adopted or settled. The judgment has furnished no other guide for the partition, than such as the description in the petition, which makes a part of the judgment, would indicate, after excluding a certain portion, in which the jury found the petitioners had no interest. The warrant for partition and the return thereon can have no effect further than they are authorized by the judgments for partition. It is this judgment alone to which the subsequent proceedings must relate, and by it the rights of the parties must be determined. Land not embraced in the petition cannot be the subject of judgment or of division.

The line on which the fence stood at the time of the decease of William Frost, on the north-westerly side of the premises, described in the petition, is the true boundary ; the judgment conforms to this. No issue was made at the trial, showing that this boundary was in question, or that the parties had any occasion to inquire whether the line upon the plan, intended to represent this boundary, was correct or erroneous ; the plan in this particular cannot therefore have any control over the petition. The judgment being in its description of the land, identical with that of the petition, neither the warrant, nor the return of the commissioners, could with

effect, transcend it. The particular location of land upon the earth, which is the subject of legal dispute, is a question of fact for the determination of the jury upon the evidence presented. When title to land is exhibited, and the limits of the land are described in the documents of title, parol evidence is competent to show where those limits are to be found upon the face of the earth ; and the evidence, offered by the tenant for this purpose, is admissible.

It is again insisted, that if the commissioners in setting off the portion to the demandant, under the warrant for partition, took land from the tenant's grantors, lying beyond that described in the petition, the part left to them to hold in severalty, of that embraced within the limits of what was the subject of division, was greater than it otherwise would be, and therefore they cannot legally claim to the line which they now contend is the north-westerly boundary of the tract assigned to him. In proceedings under a petition for partition, no person is to be considered a party, who has no interest in the land described. Strangers to the title therein, had no opportunity of making valid objections to the title of the petitioners as it is claimed by them, and the judgment cannot in any way prejudice their rights in other lands. The tenant's grantors were parties to the proceedings, under the petition, but no farther ; they could not, as proprietors of an adjoining tract, object to an erroneous line upon the plan, if the description of the boundary in the petition, was in all respects correct. So far, therefore, they could not be precluded from asserting their title to contiguous territory afterwards, in any suit, which might bring in question generally such title between any parties. Neither can the acceptance of the commissioners' return and judgment thereon, without objection by the tenant's grantors, conclude him to the line which was adopted in the return of the commissioners, according to the facts as they appear in the case. To give these proceedings such effect, it must appear that the tenant's grantors wilfully caused the demandant in some manner to believe a different state of things from that actually existing, and to have in-

duced him thereby to alter his previous position. How far such deception, in a case like the present, would prevent the tenant from setting up the true line, we give no opinion. The case discloses nothing showing in the least, that those under whom the tenant claims to hold the land in controversy, had any agency by word or act, in causing the demandant to suppose that the true north-western line of the land, for which partition was prayed, was different from that which he now contends for. It does not appear that they had knowledge of the true location of that line, which was not possessed by the other party to the same extent. And where each party has the same information, and equal opportunity to ascertain the truth, it cannot be said that one wilfully withholds any thing from, and thereby deceives the other. The former possesses no fact, which he could impart, and conceals no means of learning other facts, which are not enjoyed by the latter. *Copeland* v. *Copeland*, 28 Maine, 525. *Parker* v. *Barker*, 2 Metc. 423. *Action to stand for trial.*